[S. F. No. 6380.    Department One.—June 4, 1915.]

## PERCY W. TREAT, Respondent, v. HAYWARD C. TREAT, Appellant; WILLIAM A. NUNLIST, Intervener and Appellant.

ACTION TO QUIET TITLE—ESTOPPEL—VERDICT SUPPORTED BY THE EVI-
DENCE.—In an action to quiet title in which the defendant set up
ownership of an undivided one-half interest in the land, upon the
trial of which it appeared that the father of plaintiff and defend-
ant delivered a deed to plaintiff of the land requesting that it be
not recorded until after his death and later delivered a deed to
plaintiff conveying it equally to plaintiff and defendant, the evi-
dence is held to be such that a verdict that there was no estoppel
against plaintiff's insisting upon his right under the first deed by
reason of his not notifying defendant of its existence should not
be set aside as an abuse of discretion by the jury.

NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DILIGENCE.—A motion for
a new trial upon the ground of newly discovered evidence is properly
denied when the alleged evidence was known to defendant before the
action was begun and the intervener acquired such rights as he had
from the defendant afterward, and they both tried the case to-
gether, and the evidence itself is cumulative and of little consequence.

DEEDS—DELIVERY—RECORDATION AFTER DEATH OF GRANTOR.—If the
evidence shows a delivery of a deed the fact that it was not recorded
until after the death of the grantor in compliance with his request
does not defeat such delivery.

ID.—RECITAL OF CONSIDERATION.—The recital of consideration in a deed
is not conclusive upon the parties to it, and the real consideration
may be shown provided the effect of the evidence is not to avoid
the deed as a conveyance, which would be the case if a deed reciting
a nominal consideration should be proved to be a deed of gift from
parent to child.

APPEAL from a judgment of the Superior Court of
Contra Costa County and from an order refusing a new
trial.    R. H. Latimer, Judge.

The facts are stated in the opinion of the court.

William A. Nunlist, *in pro. per.*, and William C. Critten-
den, for Appellants.

Lilienthal, McKinstry & Raymond, for Respondent.

SHAW, J.—The plaintiff sued to quiet title to and recover possession of 228 acres of land, alleging that he was the owner thereof in fee simple. The defendant answered, denying that the plaintiff was the owner of the land, as averred, and alleging that he and the plaintiff each owned an undivided one-half thereof. He also set up facts, by way of estoppel, against the claim of the plaintiff to more than an undivided one-half of the land. While the action was pending the defendant conveyed all his interest and claim to the intervener, who filed an answer similar to that of the defendant. They each also filed a cross-complaint to quiet title to the undivided one-half claimed by the defendant and conveyed to the intervener. The intervener's rights are, of course, based on those of the defendant and need not be separately considered. The cause was submitted to a jury, a verdict was rendered for the plaintiff, and judgment was given accordingly. Defendant and intervener have each appealed from the judgment and from the order denying their motions for a new trial.

The facts relating to the alleged estoppel are as follows: On and prior to October 10, 1905, Webster Treat, the father of plaintiff and defendant, was the owner of the land in controversy. On that day, by a duly executed deed, he conveyed the same to the plaintiff. The evidence shows that it was understood between them that Webster Treat was to have the possession and enjoyment of the land during his life and that the deed was not to be recorded until after his death. This understanding was carried out by them and the father remained in possession until his death on August 7, 1908. On April 16, 1906, Webster Treat executed another deed purporting to convey the same land to the plaintiff and defendant as tenants in common, an undivided one-half to each. The defendant had been, ever since the year 1898, assisting his father in working the farm and residing in a small house thereon near a larger house which was the residence of Webster Treat. A short time after the execution of the deed of April 16, 1906, the plaintiff visited the farm in controversy and was then informed by the defendant of the execution of the deed from Webster Treat to the two sons. Plaintiff did not then inform the defendant of the execution of his deed. What he did say was that his father had always done a great deal more for the defendant than he had done for the plaintiff and that he had promised to give the plaintiff that farm.

but that he would make no fuss about the deed of one-half
to each, provided the defendant would treat the plaintiff
square, and that he wanted the large house in his half. The
defendant remained in ignorance of the deed of October 10,
1905, until August 14, 1908, a few days after the death of
Webster Treat, when he was informed thereof by the plain-
tiff. On August 17, 1908, plaintiff caused the same to be
recorded. On August 18, 1908, the defendant received a
letter from the plaintiff informing him that the plaintiff has
taken legal advice in regard to the deed, that he was advised
to have it recorded, and that he had done so. The particular
circumstances upon which the defendant claims the estoppel
are that in June, 1906, he and his father executed a note to
the Bank of Martinez for three hundred dollars to obtain
money to pay bills on the ranch; that in 1906 he repaired
some damage on the ranch caused by the earthquake; that
in November, 1907, he paid the sum of five hundred and
sixty-nine dollars upon the interest upon a mortgage given
by Webster Treat on the farm; that in January, 1908, he
and his father executed a note for four hundred and ninety-
five dollars to Ignace and Company in settlement of bills for
expenses of carrying on the farm and living expenses; that
in November, 1908, he paid the additional sum of two hun-
dred and sixty-eight dollars as interest on the father's mort-
gage on the farm; and that in November, 1908, he paid
twenty dollars taxes thereon. Webster Treat did not pay
either of the notes above mentioned and judgments have been
recovered upon said notes against the defendant, since the
death of Webster Treat. The defendant testified that he
executed these notes and made these payments and repairs
because of his belief that he was the owner of one-half of
the ranch, under the deed of April 16, 1906, from Webster
Treat, and that he would not have done so if he had been in-
formed of the execution of the deed of October 10, 1905, by
Webster Treat to the plaintiff. He also testified that he had
moved onto the farm in 1898 at the request of Webster Treat
to assist him in working the farm; that it was then agreed
between them that he should receive one hundred dollars a
month as wages; that no wages had been paid; that accounts
were existing between him and his father which had never
been settled, and that he refrained from demanding a settle-

ment of Webster Treat in his lifetime because of his belief that he was the owner of one-half of the farm.

From these facts he invokes the well-settled rules of law regarding estoppels *in pais*. In subdivision 3 of section 1962 of the Code of Civil Procedure the rule is thus stated: "Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing to be true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act or omission, be permitted to falsify it." It is also stated as follows: "Where a person tacitly encourages an act to be done he cannot afterwards exercise his legal right in opposition to such consent, if his conduct or acts of encouragement induced the other party to change his position so that he will be pecuniarily prejudiced by such adversary claim." (*Scott* v. *Jackson*, 89 Cal. 262, [26 Pac. 898].) The claim is that he made these payments and incurred these obligations relating to the farm because of his belief that he was a half owner therein; that the silence of the plaintiff as to the execution of the deed of October 10, 1905, induced the defendant to make and incur these expenditures and that, having thus caused defendant to do these things, plaintiff is now estopped to deny the ownership by defendant of the one-half of the farm which the deed of April 16, 1906, purports to convey to him.

The payment of two hundred and sixty-eight dollars in November, 1908, on the mortgage interest was made with full knowledge of the plaintiff's deed. It also appears that it was made with the proceeds of an insurance policy issued to the father, which he had hypothecated to secure payment of said mortgage, and that defendant merely received that part of the proceeds and paid it to the mortgagee. His claim that he would not have done this, if advised of the prior deed, is futile, since the law would compel its payment upon the mortgage for the security of which it had been pledged by his father. The payment of twenty dollars on taxes is explained by evidence showing that it was charged to the plaintiff and deducted from the proceeds of the ranch apportioned to him. The evidence further shows that the defendant has been fully reimbursed for the five hundred and sixty-nine dollars paid on the interest in 1907, and for his obligations to the bank and Ignace and Company. The declaration by

the plaintiff after the deed of April 16, 1906, that he would
make no fuss about that deed, and wanted the property
divided so as to give him the larger house, did not operate as
a conveyance of the one-half of the farm to the defendant.
The deed of October 10, 1905, conveyed the same to the plain-
tiff.    Thereafter he was the owner of the entire estate, not-
withstanding the execution of the deed of April 16, 1906.
The defendant remained upon the farm and worked the same
with his father, living in the house and, in part at least, re-
ceiving his support therefrom.    The crops for the year 1908
were equally divided between the two brothers after the
father's death.    The defendant received from the proceeds
thereof the sum of seven hundred and fifty-two dollars.    He
continued to live on the farm during 1909, and received of
the proceeds of the crops for that year the sum of nine
hundred dollars.    These moneys, in point of law, belonged
to the plaintiff.    It cannot be said that the defendant was
prejudiced by the fact that he paid out money and incurred
obligations for his father amounting to less than his brother
allowed him to receive from the farm.    Taking the account
as a whole, the defendant was benefited more than injured by
the conduct of the plaintiff.

The evidence discredited the claim of the defendant that
there were unsettled accounts between himself and his father.
The father kept a book account with the defendant.    This
shows that he had advanced large sums of money to the de-
fendant upon which the defendant was charged up to
February 6, 1907, with the sum of $9972.99.    On that day
the father entered a credit to him for labor and services
rendered equal to the amount charged.    Other evidence indi-
cated that the defendant had always been something of a
burden to the father, and that it was for his benefit, and not
for that of his father, that he was asked and allowed to live
on the place and assist in its management.    The claim that
there was an agreement by the father to pay the defendant
one hundred dollars a month for his services and that there
was an unsettled account between them rests entirely on the
testimony of the defendant.    The credibility of a witness is
a matter for the determination of the jury.    They were
at liberty, if they found him willfully false in a material
matter, to disbelieve entirely the defendant's statements
(Code Civ. Proc., sec. 2061; *White* v. *Disher,* 67 Cal. 402,

[7 Pac. 826]; *Mogk* v. *Peterson*, 75 Cal. 501, [17 Pac. 446]). Their general verdict in favor of the plaintiff, as well as their answers to specific questions, indicate that they did refuse to believe him. The evidence does not show that the plaintiff "intentionally and deliberately led" the defendant to make said expenditures and incur said obligations, or that plaintiff knew that the defendant was doing this because of a belief that he was the owner of one-half of the farm. The defendant and Webster Treat were occupying the land and farming it. There was nothing that occurred during the father's lifetime to inform the plaintiff that the defendant had paid out this money and incurred these obligations, or whether he was doing it on the faith of the belief that he was a half owner, or in pursuance of some arrangement with the father. The jury might reasonably have believed from the evidence that the plaintiff's statement regarding the division of the land and his silence concerning his own deed were prompted by a desire to avoid annoyance to his father, who was old and ill, and by a willingness to favor the defendant with respect to the farming operations carried on during the father's lifetime, which included the crop of 1908, and without either knowledge that defendant had, or expectation that he would, pay money or incur debts on the faith of the efficacy of the deed of April, 1906. All reasonable inferences are to be made in favor of the verdict. Plaintiff had left the land in control of his father and defendant said nothing to indicate that he intended to disturb that control, or deal with the land himself. Fraud, actual or constructive, against the opposite party, is an essential element of an estoppel against the legal owner of land to prevent him from asserting his title. (*Boggs* v. *Merced M. Co.*, 14 Cal. 368; 2 Pomeroy's Equity Jurisprudence, sec. 807.) Unless plaintiff had some cause to believe that the defendant would act to his injury on the faith of that deed, it cannot be said that fraudulent intent on his part was shown. There was no proof of the value of the land and therefore the proportion of the expenditures and obligations mentioned to the value of the one-half interest claimed by the defendant does not appear. Under all the circumstances of the case, we cannot say that the jury abused their discretion in holding that the estoppel was not established.

The appellant further insists that upon the hearing of the motion for new trial the court erroneously refused to consider two affidavits relating to newly discovered evidence. This ruling of the court is also the subject-matter of three other and separate appeals, which, by stipulation, are submitted herewith, numbered respectively S. F. 6421, S. F. 6742, and S. F. 6743, *post,* p. 337, [150 Pac. 57]. The defendant and intervener proposed their bill of exceptions to be used in support of their motion for new trial on April 10, 1912. The affidavits referred to were not incorporated therein. Both of them were made thereafter. No amendments were offered to this proposed bill, and it was settled by the judge, as proposed, on April 22, 1912, upon a stipulation signed by the intervener in person and by the attorneys for the defendant. Under these circumstances, perhaps, the court was justified in refusing to consider the affidavits, but it is unnecessary to decide the question. The affidavits themselves are insufficient to justify an order for the granting of a new trial. The alleged newly discovered evidence was obviously known to the defendant long before the action was begun. So far as he is concerned, his failure to produce the evidence or refer to it is inexcusable. The intervener has no claim whatever except that which he derived from the defendant after the beginning of this action. He and the defendant conducted the case together and he cannot be excused for not inquiring of the defendant concerning the alleged new evidence. No diligence was shown by either of them. Furthermore, the evidence itself is of little consequence and is entirely cumulative.

There is no merit in the claim that the deed of October 10, 1905, was not delivered. The evidence of its delivery was full and complete, so much so that we will not lengthen the opinion by further reference to it. The mere fact that the grantor, Webster Treat, after delivering it to plaintiff, requested him not to have it recorded until after the grantor's death, is of no consequence. It did not affect the validity of the delivery, nor prevent the deed taking effect immediately as a transfer of title. (Civ. Code, sec. 1056.) The court did not err in its rulings in regard to evidence relating to a deed signed by Webster Treat in 1898, purporting to convey the property to plaintiff. The plaintiff did not claim under that deed. He did not contend that it had ever been deliv-

ered, and the evidence regarding it was merely explanatory of the relations existing between himself and his father. The ruling could not, under any circumstances, have operated to the injury of the defendant or the intervener.

With respect to the refusal of the court to submit the particular question of fact to the jury as requested by the appellants, it is sufficient to say that under the provisions of section 625 of the Code of Civil Procedure, as amended in 1909, and which was in force at the time of the trial, it was discretionary with the court to give, or refuse to give, such questions to the jury.

The appellants further claim that the special finding of the jury to the effect that there was no valuable consideration passing between the defendant and Webster Treat for the deed of April 16, 1906, is contrary to the evidence. This claim is based primarily upon the proposition that the recital in the deed that the consideration was ten dollars is conclusive evidence, against the parties hereto, that there was a valuable consideration. This claim is untenable. The rule on this subject, in cases between parties to a deed, is that evidence may be received that the real consideration for a deed is different in character from that expressed therein; as for example, that it was love and affection and not money, as recited, or the contrary, provided such proof does not avoid the deed as a conveyance. (*Peck* v. *Vandenburg,* 30 Cal. 22.) The proof that there was no valuable consideration would not affect the validity of the deed as a conveyance, and therefore, the recital is not conclusive. There was abundant evidence justifying the conclusion that the deed was intended by Webster Treat as a gift and that the defendant gave no consideration therefor. We need not state the evidence in detail. It is not claimed that it is insufficient in itself, provided the recital is not conclusive.

The judgment and order are affirmed.

Sloss, J., and Lawlor, J., concurred.

Hearing in Bank denied.

In denying a rehearing herein, and also in *Treat* v. *Treat,* (S. F. Nos. 6421, 6742, 6743), *post* p. 337, the court in Bank filed the following opinion on July 2, 1915.

THE COURT.—The applications for rehearing in the above entitled appeals are denied.

Owing to the fact that the point was very obscurely made in the appellants' briefs, it is true that the court in Department assumed that the issues on the question of estoppel were, without objection of the parties, determined by the jury by their general verdict. It appears that, following a somewhat irregular and certainly unprecedented procedure, those issues were reserved by the court for determination after judgment, on motion to be made by defendant and intervener to set aside the judgment. Such a motion was made by both defendant and intervener, heard by the court and denied on the merits. The records on the appeals before us clearly show that the trial court thus considered and determined those issues. That the evidence was sufficient to support such a finding and determination is shown very clearly by the opinion in Department in appeal S. F. No. 6380, *ante,* p. 329, [150 Pac. 53]. As we have said, there was no objection to the procedure followed by the lower court in the matter, and while it was irregular it is clear that all issues presented in the case have been fairly determined in the lower court, and that neither defendant nor intervener has been deprived of any substantial right. It is proper to say that the procedure adopted appears to have been suggested by the trial court.