[Civ. No. 2085.   Third Appellate District.—March 18, 1920.]

CITY LUMBER COMPANY (a Corporation), et al., Appellants, v. J. T. BROWN et al., Respondents.

[1] DEED—DELIVERY ESSENTIAL.—Delivery of a deed is necessary to consummate the conveyance.

[2] ID.—POSSESSION BY GRANTOR—DELIVERY—EVIDENCE.—Where the deed is found in the possession of the grantor, this fact is evidence that it was not delivered to the grantee.

[3] ID.—DELIVERY TO THIRD PARTY.—Where the grantee directs or agrees that the deed may be left for him with a third party, the delivery to the latter is equivalent to a delivery to the grantee, the third party being thus constituted the grantee's agent for such purpose.

[4] ESTOPPEL—INDUCING OTHERS TO CHANGE POSITION—RIGHTS OF LEGAL OWNER—FRAUD.—The principle that where a person tacitly encourages an act to be done he cannot afterward exercise his legal right in opposition to such consent, if his conduct or acts of encouragement induced the other party to change his position so that he will be pecuniarily prejudiced by such adversary claim, can be invoked against the legal owner of land to prevent him from asserting his title only when he is chargeable with fraud, actual or constructive, against the opposite party.

[5] ID.—CONSTRUCTION OF BUILDING—FORECLOSURE OF TRUST DEED—EXTINGUISHMENT OF LIENS.—Where the owner of land conveys it to another and the latter, while the owner subject to a deed of trust of record executed by him in favor of the former owner, contracts for services and materials in connection with the construction of a building on the land, and thereafter, upon a foreclosure of the deed of trust, the former owner again becomes the owner, he takes the property free and clear of the liens of the lien claimants who furnished such services and materials, if the transaction is free from fraud.

[6] ID.—IMPROVEMENT AND SALE OF LAND—JOINT ENTERPRISE—LIABILITY TO LIEN CLAIMANTS.—Where the owner of land conveys it to another, taking back a deed of trust, and there is between them an understanding and agreement that the latter is to construct a building on the land and both are to be equally interested in the property and are to share in whatever profits might be enjoyed, both are liable for the cost of the building, and the building itself is subject to a lien for labor done or materials furnished in the absence of the notice of nonresponsibility provided by section 1192 of the Code of Civil Procedure.

APPEAL from a judgment of the Superior Court of Los
Angeles County. Chas. Wellborn, Judge. Reversed.

The facts are stated in the opinion of the court.

John F. Poole, G. C. DeGarmo and Daniel Beecher for
Appellants.

Will Hays and Milton K. Young for Respondents.

BURNETT, J.—The plaintiffs filed mechanics' liens on
the property at issue herein amounting to the sum of $1,850
for materials and labor actually used and furnished in the
construction of a four-flat building, and they brought suit
against A. F. Whittington, J. T. Brown, and others for a
personal judgment and also to foreclose said liens. The
court found all the liens valid and gave judgment accord-
ingly as against A. F. Whittington, but would allow no
foreclosure on the property upon the theory that the liens
were wiped out by the sale under an instrument in the form
of a trust deed, in favor of defendant Brown, for $1,850,
and the court gave Brown judgment for his costs. The
court also found "That from on or about the seventeenth
day of March, 1916, to on or about the seventeenth day of
December, 1916, the defendant, A. F. Whittington, was the
owner" of the property; "that on or about the twenty-
fourth day of March, 1916, the defendant A. F. Whitting-
ton, as owner, entered into the construction of a building
upon said premises. That the defendants J. T. Brown and
Marie M. Brown were not connected or associated in any
way, either as owners or otherwise, with the said defendant
A. F. Whittington in the construction of said building.
That said J. T. Brown and Marie M. Brown were not con-
nected or associated with the said defendant A. F. Whitting-
ton in any contract or contracts in regard to the furnishing of
labor or materials upon said building, with the plaintiffs
. . . , or any or either of them, but that all contracts entered
into in regard to the construction of said building by the
said plaintiffs and cross-complainants, aforesaid, and each
of them, were entered into solely by the said A. F. Whitting-
ton. That all materials furnished in the erection of said
building, and all work and labor done thereon by plaintiffs

. . . , or any or either of them, were furnished to the said A. F. Whittington and at his request, and not at the request of the defendants and said defendants J. T. Brown and Marie M. Brown or either of them." There is a further finding that on the eleventh day of March, 1916, said A. F. Whittington executed and delivered to said Brown his promissory note in the sum of $1,864 and at the same time executed a certain deed of trust on said property to the Title Guarantee and Trust Company in favor of said Brown to secure the payment of said promissory note and that said deed of trust was recorded on March 13, 1916. It further appears from the findings that said Whittington made default in the payment of said promissory note and that on the seventh day of December, 1916, according to the terms and provisions of said trust deed, the property therein described was regularly and duly sold to said Brown and that said company thereupon executed to said Brown its deed to said property, and that ever since that date said Brown has been and now is the owner of the property. It is further found "That said trust deed last mentioned, in favor of said defendant and cross-defendant J. T. Brown, was executed, delivered, and recorded prior to the commencement of work or the delivery of any materials upon the premises described herein, by any of the plaintiffs or cross-complainants herein." The foregoing recital of the findings is sufficient to indicate the theory upon which the court declined to subject the property to any lien for the labor and materials furnished by said plaintiffs or to hold the defendant Brown personally liable for said claims.

The first point made by appellants is that there is no evidence to sustain the finding as to the ownership of Whittington. The particular contention in that respect is that there was no delivery of the deed from Brown to the grantee. In support of their view they quote from the testimony of Mr. Whittington to the effect that Mr. Brown said he was the owner of the lot, that he, Whittington, never got a deed from Mr. Brown and never saw a deed, that he received nothing for the property and gave nothing for it, "that he had never seen any deed for this property from Mr. Brown to himself. That he never recorded any deed." Appellants assert, also, that "the evidence shows without conflict that the so-called deed was never in the possession of Whitting-

ton and was at all times in the possession of defendant Brown.'' [1] Certain cases are cited in support of the position of appellants, but we need not review them, as the necessity for a delivery to consummate the conveyance is not and cannot be disputed. [2] Nor can there be any question that where the deed is found in the possession of the grantor this fact is evidence that it was not delivered to the grantee. The trouble is, however, that there is other testimony in the case that places the question of delivery in an entirely different light, and such testimony is sufficient to support the implied finding of the court that the deed was delivered. For instance, the defendant Brown testified: ''I told Whittington that my wife and I would sign the deed and leave it with the Fidelity for them. When I told him I would leave the deed at the Fidelity, he said he would come there and get them when the time came and was ready for them.'' It thus appears that by agreement Brown was to leave the deed with the Fidelity— meaning the Fidelity Savings and Loan Company—for Whittington. There is evidence that this was done. [3] It will not be disputed that where the grantee directs or agrees that the deed may be left for him with a third party the delivery to the latter is equivalent to a delivery to the grantee, the third party being thus constituted the grantee's agent for such purpose.

The second contention of appellants is that Brown stated to the lien claimants that he was the owner of the property and that he is, therefore, now estopped from denying it. If he had made such statements to the lien claimants before they furnished the material and they had relied upon his assertion of ownership, the principle of estoppel would manifestly apply. (Code Civ. Proc., sec. 1962, subd. 3.) But it does not appear that such declaration of Mr. Brown was prior in time and, besides, he testified substantially that he told these claimants that he *had* owned the property, but that he then was secured by a trust deed for the payment of $1,850. Hence, we are satisfied that appellants cannot prevail upon this ground.

[4] Again, appellants claim with much earnestness that since Mr. Brown has had the benefit of the flats ''the most elementary principles of common honesty'' prevent him

from asserting his title in opposition to the claims of those having bestowed upon him such advantage. In this connection quotation is made from various decisions, from which we reproduce from *Scott* v. *Jackson,* 89 Cal. 262, [26 Pac. 899], the following: "Where a person tacitly encourages an act to be done he cannot afterward exercise his legal right in opposition to such consent, if his conduct or acts of encouragement induce the other party to change his position so that he will be pecuniarily prejudiced by such adversary claim." That principle is, of course, well settled and is embodied in the statute as a rule of conduct. (Subd. 3, sec. 1962, Code Civ. Proc.) But it can be invoked against the legal owner of land to prevent him from asserting his title only when he is chargeable with fraud, actual or constructive, against the opposite party. (*Treat* v. *Treat,* 170 Cal. 334, [150 Pac. 53].) In this case there is no doubt that Brown had knowledge of the fact that said services were performed by plaintiffs, and if they had no notice, either actual or constructive, of his title and he permitted them to supply said materials for the building without disclosing his ownership, then, manifestly, he would be estopped from setting up his title to the prejudice of the claimants. [5] But we must consider this point upon the theory of respondents, that, while the services were being performed, with the exception possibly of a portion of the lumber, Brown was not the owner at all, but had conveyed the property to Whittington, and that the deed was a matter of record to which the claimants were required to take notice. In this aspect the case is essentially the same as though A, owning a lot, had conveyed it to B, the deed having been recorded, and, thereafter, B built a house upon the lot, obtaining certain materials therefor with the knowledge of A, but without any agreement by the latter to pay for said material, A having become the owner again after the completion of the building. The statement of the case is sufficient to show that A would not be precluded from asserting the title which he subsequently acquired. It can make no difference that he originally owned the property, or that his second title was obtained upon the foreclosure of a mortgage or through a sale under a trust deed, it being assumed, of course, that the transaction was free from fraud and conducted in good faith.

Another question of importance is whether the liens of plaintiffs were extinguished by the sale of the premises to Brown under the trust deed. It seems to be the contention of appellants that, in effect and characteristics, said trust deed is similar to a mortgage and that they had at least the rights of redemptioners. In support of their view they cite *MacLeod* v. *Moran,* 153 Cal. 100, [94 Pac. 605], wherein it was said: "The nature of such an instrument has been extensively discussed by this court, and the sum and substance of such discussion is that while the legal title passes thereunder, and the trustees cannot be held to hold a mere 'lien' on the property, it is practically and substantially only a mortgage with the power of sale. . . . The legal title is conveyed solely for the purpose of security, leaving in the trustor or his successors a legal estate in the property as against all persons except the trustees and those lawfully claiming under them." That was a sufficient definition for the purposes of that case, as the question involved therein was whether the execution of such trust deed operated as an abandonment of a previous declaration of homestead.

But it is clear that between the ordinary mortgage and a trust deed like the one before us there is a vital difference in respect to the equity of redemption. This was recognized in the early decisions in this state and they have been followed ever since. In *Koch* v. *Briggs,* 14 Cal. 257, [73 Am. Dec. 651], in an opinion by Chief Justice Field, it is said that "in mortgages there exists the right to foreclosure, after condition broken, and the right of redemption from forfeiture," but in a deed of trust to secure the indebtedness, a suit to foreclose would not lie, but "a sale could only be made by enforcing the trust, and from sales under such trusts there is no equity of redemption, for there is no forfeiture."

The foregoing is approved in *Herbert Kroft Co.* v. *Bryan,* 140 Cal. 73, [73 Pac. 745], wherein it is said: "This view of the nature of such a trust deed, and the difference between it and a mortgage, has not been departed from, and its validity as an instrument passing title, and not merely creating a lien as a mortgage to be foreclosed, has been constantly upheld," citing cases.

The latest expression upon the subject which we have found is contained in *Metropolis etc. Sav. Bank* v. *Barnet,*

165 Cal. 449, [132 Pac. 833], a case in its facts quite similar to the one before us. In that case the deed of trust was executed prior to the filing of the mechanics' liens and the debtor defaulted in the payments provided for in the trust deed and at a sale thereunder the beneficiary became the purchaser of the property. Subsequently, in the mechanic's lien suits, judgment was awarded the lien claimants, making certain sums a lien upon all of the real estate, subject and subordinate, however, to the lien of respondent under the deed of trust, and authorizing the property to be sold. The supreme court said: "But this interest—the interest of Brand in the property (Brand being the original owner)— which was subject to the mechanics' liens and ordered sold, and which appellants undertook to have sold, had even before the judgment in the mechanic's lien suit had been entered, ceased to exist or be subject to the mechanic's lien judgment by virtue of the trustee's sale and deed to the respondent under its superior and recognized lien. This latter conveyance vested the absolute title in respondent and thereby effectually destroyed the lien of the mechanic's lien suit judgment." That the claim of such lien claimants is subject to the right of a mortgagee under a prior mortgage is, indeed, not disputed, the rule being recognized as set forth in *Valley Lumber Co.* v. *Wright,* 2 Cal. App. 288, [84 Pac. 58].

Where the security is in the form of a mortgage, there must, of course, be a foreclosure and sale in order to subject the property to the satisfaction of the debt, and subsequent lienholders may have an opportunity to join in the action and to promote, if possible, a sale for a sufficient amount to satisfy their own as well as the prior claim, and they are also entitled to the right of a redemptioner. (Code Civ. Proc., sec. 701; *Whitney* v. *Higgins,* 10 Cal. 547, [70 Am. Dec. 748].) In case of a trust deed, however, no suit is required for the sale of the property, there is no right of redemption, and, if the property is sold for no more than sufficient to satisfy the claim of the beneficiary, then the subsequent liens fall. Of course, the subsequent claimants have an opportunity to promote the sale of the property or to purchase it themselves for their own protection, but beyond that, it would seem, they cannot go.

Awarding, therefore, full force and effect to said written instruments and records, according to their apparent intent and purpose, we can find little comfort for appellants. There is, however, another view of the evidence, which seems to place the situation in a different light.

[6] It appears that there was an agreement between Brown and Whittington that the improvement and sale of the lot were to constitute a joint enterprise and they were to share in whatever profits might be enjoyed. No objection was made to this evidence, and the fair purport of it is that Whittington held the property for the benefit of himself and Brown and that in making the improvements he represented both parties. He was thereby authorized to bind Brown in making engagements for the construction of the flats. His contract, therefore, became also the contract of Brown. If A conveys a lot to B and takes back a deed of trust or mortgage, and there is between them an understanding and agreement that B is to construct a building and both are to be equally interested in the property, does it not follow that both are liable for the cost of the building, and is not the building itself subject to a lien for labor done or materials furnished in the absence of the notice provided by section 1192 of the Code of Civil Procedure? In other words, the parties being jointly interested in the property as a matter of fact, notwithstanding the said conveyance and deed of trust, and each having knowledge that said material was furnished for and was used in said building, and no notice having been given by either that he would not be responsible for the claim, the interest of both, the law says, shall be subject to said claim. (Sec. 1192, Code Civ. Proc.)

This view, we may add, would compel Brown to pay for the building less than it is apparently worth. He will still get it for some seven hundred dollars less than it cost. Defendant A. F. Whittington testified that he and defendant Brown agreed that the cost of the building, according to the plans furnished by said Brown, would be between six thousand five hundred dollars and seven thousand dollars. The actual cost for materials and labor was $6,175. Nothing was paid for superintending the construction of the building and there was no compensation paid to the contractor. The

actual money paid out for the construction of the building
for materials and labor was $3,613.80.

To show the ground for this conclusion we call attention
to the evidence on the subject. Mr. Whittington testified
that he was taken to Brown's office by another Mr. Brown
and that the former produced some plans and asked him if
he could build that house and he told him he could; that
Brown said he drew up the plans himself with the assistance
of his wife; "that it was agreed the price of the building
would run somewhere between six thousand five hundred dol-
lars and seven thousand dollars; that he told him that he
owned the lot and asked him to go out and look at it; that he
went into the figures with Mr. Brown to see what it would
cost; that Brown said that it would take two thousand five
hundred dollars to pay off the mortgage on the lot; that he
(Whittington) said he did not have the money to pay it off,
Brown said he could arrange that; that Brown said if they
could get together on it they could go ahead and make a
good clean-up on it, make some money; that he (Brown) said
that he would take care of all the bills if he (Whitting-
ton) could get a thirty days' credit for a little bill of sale
that would be left with the lumber-yard; that they went
ahead and constructed the building; that it was finished
about October 24th; that he went there on that date and
found three apartments rented; that Brown said he was the
owner of the lot; that nobody else ever claimed it; that he
apparently purchased the lot, but that it was intended that
Mr. Brown and he would be together and that they would
make a clean-up of it at the finish; that they were to get
the building built they would trade it or sell it at a good
advantage; that they were to share the profits in the deal;
that he never received any of the one thousand eight hun-
dred dollars trust deed money; that he was on the job work-
ing all the time; that Mr. Brown was to finance the deal
absolutely." He was not contradicted as to the agreement
to treat the project as a joint enterprise and to share the
profits; Mr. Brown, as a witness, did not deny it, and the
conduct of the parties confirms the theory that Brown and
Whittington were to be equally concerned in the property.
For that reason Brown did not require of Whittington the
payment of any of the so-called purchase price of the lot
nor did the latter concern himself about the delivery of the

deed from Brown and his wife. In consonance with this view, Brown "O. K.'d" the bills, and told various parties that he was the owner of the property. Viewing the whole record we think it appears without substantial conflict that Whittington represented both himself and Brown in ordering the material for said building, that they were both equally bound for said indebtedness, and that the finding of the court to the contrary is unsupported.

Of course, if Brown had denied that there was such an agreement as Whittington testified to, the case would present a different aspect. But, as we have said, it stands uncontradicted and it cannot be ignored.

We are satisfied the trial court was in error in relieving Brown of all responsibility for these claims and the judgment is, therefore, reversed.

Hart, J., and Ellison, P. J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 17, 1920.

All the Justices concurred.