[Civ. No. 6629. Second Appellate District, Division Two.—April 13, 1931.]

CHRIS. HEINSBERGEN, Jr., Appellant, v. ALLEN C. JENKING et al., Defendants; BERT M. DALE, Respondent.

F. H. Whitfield for Appellant.

Jules C. Goldstone and William Berger for Respondent.

ARCHBALD, J. *pro tem.*—This is an action for the foreclosure of two mechanics' liens for labor and material furnished by plaintiff and his assignor, A. H. Joffee, in the construction of a duplex residence on the property known as 6208 West Sixth Street, Los Angeles. In addition to the respondent Dale, A. C. Jenking and wife, who were alleged to be the "owners or reputed owners" of the property, were made defendants, and as to such alleged owners the complaint contains the allegations usual in such an action. The judgment recites that the action was dismissed as to the defendants Jenking on motion of plaintiff; that defendant Dale moved that no evidence be received as to him and that evidence be excluded as to him upon the ground that the complaint stated no cause of action against him, which motion was granted; that defendant Dale then moved for judgment "upon the pleadings and upon all of the record and proceedings in said action", which motion was likewise granted by the court, judgment following in favor of the moving party. Plaintiff appeals.

A motion by the defendant for judgment on the pleadings tests the sufficiency of the complaint. "All the facts alleged in the complaint are admitted for the purposes of the motion, and the court is to determine whether those facts constitute a cause of action." (*Hibernia S. & L. Soc.* v. *Thornton,* 117 Cal. 481, 482 [49 Pac. 573, 574].)

Turning to the complaint, we find the allegations with regard to the defendant Dale are substantially as follows: That prior to July 20, 1926, the property in question belonged to him; that about July 10, 1926, it was agreed between Dale and the Jenkings that the former would make a grant deed of the property to the Jenkings and that the latter would construct thereon a "double flat residence", with the aid and assistance of Dale; that Dale would assist defendants Jenking to procure a building loan which would be first mortgage, and that the latter would execute and deliver to Dale, at the time such loan was procured, a $4,500 trust deed subject to the building loan, and that the Jenkings would pay to Dale the sum of $1500 on account of the purchase price of said premises; that on July 20, 1926, the deed was made, the loan procured and the trust deed executed as agreed, and at the same time the Jenkings gave to Dale their check for $1500, with the "mutual understanding" that it was not at that time good and would not be paid until later; that after the loan was obtained defendant Allen C. Jenking, "with the assistance of said Bert M. Dale", began the erection of said building; that Jenking used the office of Dale as his office and place of business from July 20, 1926, until November 1, 1926, and that the latter knew Jenking's "financial condition, property and operations" and that he was not a "practical experienced builder or contractor, but had had previous architectural experience"; that defendant Dale, prior to July 20, 1926, and since that time, "has been engaged actively as a building contractor", and that defendant Allen C. Jenking, "with the advice and assistance" of the former, continued to construct said building from July 20, 1926, until on or about November 1, 1926; that on July 20, 1926, Dale "agreed that he would take his trust deed for six months and upon the completion of said building he would cancel said trust deed and negotiate a larger trust deed sufficient to pay off said $4,500 and the unpaid material and labor bills" and free the property of all encumbrances except the building loan and new trust deed; that defendant Dale further agreed with the defendants Jenking that the latter "would not be annoyed with bill collectors, demands or liens", and that they would make a financial profit by building said building with his assistance. The complaint further alleges that on November

4, 1926, defendant Allen C. Jenking was unable to finance the completion of the building and that on that date defendants Jenking executed and delivered a written lease of the premises to defendant Dale, who paid Allen C. Jenking ''$200 cash, and agreed to pay the necessary bills to complete said premises''; that the former did thereafter pay $1,000 on account of said bills; ''that ever since said 4th day of November, 1926, and particularly from its completion on December 1, 1926, the defendant Bert M. Dale has had sole charge and possession of said premises and has received the income and proceeds arising therefrom''; that Dale knew of the contracts of plaintiff and his assignor long prior to November 4, 1926, and that both contracts were completed between said date and December 1, 1926, with the ''personal knowledge and consent'' of the defendant Dale; that plaintiff and his assignor had no knowledge of said lease until long after said building was completed; that Dale did not at any time ''post upon said premises nor publish or file, nor record . . . any notice of his nonresponsibility for work and material bills or obligations in and about said improvement pursuant to the terms of section 1192 of the Code of Civil Procedure of California'', and did not inform plaintiff or his assignor ''that the said Bert M. Dale or his interest in said property and premises would not be liable for their accounts''.

Appellant apparently contends (1) that Dale was a joint venturer in the construction of the building with the Jenkings, although a beneficiary under a trust deed on the property, (2) that he is estopped from setting up his title under foreclosure of his trust deed; and (3) that his property is liable under an agreement made with the defendants Jenking for the benefit of plaintiff and his assignor.

Appellant relies upon the case of *City Lumber Co.* v. *Brown,* 46 Cal. App. 603 [189 Pac. 830, 833], in which it appears that there was an agreement between Brown, the beneficiary under a deed of trust, and one Whittington, the record owner, that ''the improvement and sale of the lot were to constitute a joint enterprise and they were to share in whatever profits might be enjoyed''. In that case no objection was made to the introduction of such evidence nor was it controverted by Brown, and the court held that the fair purport of such an agreement was that Whittington

held the property for himself and Brown and that in making the improvement for which the liens were claimed he represented both parties; and as the parties were jointly interested in the property notwithstanding the conveyance and deed of trust, and as each knew the improvements were being made, no notice of nonresponsibility under section 1192 of the Code of Civil Procedure having been given, the case was reversed, the trial court having held that Brown was not responsible. ■ The allegations of the complaint here have but to be read to see that they fall far short of alleging any such agreement. In fact, they seem to carefully avoid making such an allegation. The mere fact that it is alleged that Dale ''would assist'' his co-defendants in constructing the building, and that Allen C. Jenking ''with the advice and assistance of said Dale'' continued to construct the same, Dale being a contractor and Jenking not being ''a practical, experienced builder'', merely having had previous architectural experience, together with the other allegations does not make a joint enterprise out of their association, under which Jenking held title for both and was agent for Dale in the construction of the building. ■ Appellant's brief rather hints at some agreement that would border on the fraudulent, but the allegations, assuming them all to be allegations of ultimate fact and not recitals of evidence and conclusions, are more consistent with the utmost good faith and fair dealing than with a conspiracy based on sharp practice. ■ No ''joint enterprise'' between Dale and the Jenkings being alleged, involving the lot and the improvements, all that remains upon which to base an estoppel is the fact that Dale was the holder of a trust deed recorded long prior to the commencement of the work of improvement by plaintiff and his assignor and under which there was a foreclosure sale after the building was commenced. The allegations with regard to the leasing of the premises by Dale from Jenking would not seem to be related to any estoppel, as it is alleged that neither plaintiff nor his assignor knew anything about that until after the building was completed. The complaint does allege that Dale assigned his trust deed as collateral security in October, 1926, and then alleges that he ''received a trust-deed sale deed'' on or about November 4, 1927. There is no allegation that he made the sale under the trust deed, but

the inference would seem to be that the party to whom he assigned it did so and that Dale bought the property in at the sale to protect himself. It does not appear from the complaint that Dale did anything under the lease, to the knowledge of appellant, that led him to change his position in any way, and so far as the allegations of the complaint show, when the sale under the superior lien of the trust deed took place respondent's rights under the lease, as well as appellant's and his assignor's right to a lien, were extinguished and the absolute title to the property vested in respondent as purchaser at such sale. (*Metropolis etc. Bank* v. *Barnet*, 165 Cal. 449, 455 [132 Pac. 833].) █ There is no allegation of any agreement, conduct or declaration, intentional or otherwise, on the part of Dale that misled plaintiff or his assignor in any way to act to their detriment —nothing that shows they relied at all on there being any other relationship between Dale and Jenking than that of friendly assistance and creditor and debtor, so there is nothing that would estop respondent from showing that such was the true situation. (Code Civ. Proc., sec. 1962, subd. 3.)

█ As to appellant's third contention, evidently based upon the allegation that Dale would upon the completion of the building cancel his trust deed and "negotiate a larger trust deed" sufficient to pay off his own "and the unpaid material and labor bills" and free said property from all encumbrances except such larger trust deed and the building loan, and the further allegation that at the time the lease was made to him by the Jenkings respondent paid Mr. Jenking $200 cash and agreed to pay the necessary bills to complete the building, such promises would seem to be personal only, and we fail to see how that could make Jenking Dale's agent so that his contracts would bind him as to any future interest in the property which he might obtain by a sale under his trust deed; and there is no allegation that plaintiff and his assignor knew of such agreements, and relying thereon either began or continued work under such contracts, so no estoppel in that regard is alleged. █ So far as the right to proceed against Dale personally is concerned, it is sufficient to say that, even assuming such a cause of action is sufficiently alleged, appellant in his brief expressly says that "no personal judgment has been asked against respondent, although the appellant was undoubtedly

entitled to ask and receive a personal judgment'', and that ''the sole question presented is as to whether the interest of Dale in the property is subject to appellant's liens''.

Judgment affirmed.

Craig, Acting P. J., and Thompson (Ira F.), J., concurred.