[Civ. No. 11454. Second Appellate District, Division One.—December 24, 1937.]

ALFRED WELCH, Respondent, v. FENTON H. SINK, Appellant.

Hugh B. Rotchford, W. C. Smith and Everett H. Smith for Appellant.

Delamere F. McCloskey and Russell D. Hardy for Respondent.

YORK, P. J.—This is an appeal by defendant from the judgment entered pursuant to the verdict of the jury for the sum of $2,213.50 in favor of plaintiff, and an appeal from an order denying defendant's motion for judgment notwithstanding the verdict; plaintiff has also moved this court for an order dismissing the appeal or affirming the judgment.

Plaintiff's said motion to dismiss or affirm is made upon the ground that the questions involved in the appeal are so unsubstantial as not to need further argument and that the appeal is frivolous because based on a conflict of evidence.

As grounds for his appeal from the judgment, defendant claims (1) that plaintiff was guilty of contributory negligence; (2) that there is no evidence of any negligence on the part of defendant; (3) that the evidence is insufficient to support the verdict and judgment against defendant; (4) that the court erred in giving and refusing to give certain instructions to the jury.

The plaintiff, a professional dancer, at 8 o'clock in the evening of July 9, 1936, while walking in a pedestrian crossing across Vermont Avenue from west to east at its intersection with Hollywood Boulevard, was struck by defendant's automobile and thereby suffered injuries to the extent of a fractured left leg, six fractured ribs, an injury to his left elbow, contusions and abrasions of the right cheek and of both knees, as well as injuries to his chest.

From a licensed surveyor's map, which was used during the trial and was made a part of the record herein, it appears that at the intersection in question, Vermont Avenue runs north and south and is intersected at an angle to the southeast by Hollywood Boulevard, the southerly line of Hollywood Boulevard curving around the easterly boundary of Barnsdall Park and joining Vermont Avenue on the southwest side thereof. Said map shows a well-marked pedestrian zone or crossing which was also plainly marked on the surface of the roadway at the time of the accident. This pedestrian crossing, which was the path within which plaintiff was walking at the time he was struck, starts at the southwest corner of the intersection, runs in a northeasterly direction for about thirty feet, and then turning abruptly, runs in a southeasterly direction across Vermont Avenue to the southeast corner of said intersection, to which latter point plaintiff was proceeding.

By reason of the fact that Prospect Avenue and Hollywood Boulevard intersect and merge at Vermont Avenue, a small triangular safety island (also shown on said map), is formed within the north half of Hollywood Boulevard, west of Vermont Avenue and near the northwest corner of said intersection. This safety island is surrounded by traffic buttons and upon it is located a traffic signal. The record shows that there are seven traffic signals and one stop sign at this complicated intersection, and that one of these traffic signals is located on a loading zone in the southerly half of Hollywood Boulevard, west of Vermont Avenue, adjacent to the car tracks which traverse Hollywood Boulevard.

Defendant testified that he was driving south on Vermont Avenue in the middle lane of traffic at a point approximately 80 feet north of the northwest corner of said intersection when the signal light directing north-south traffic on Vermont Avenue turned green; that the signal changed when he was

partly through the intersection, to wit: the first bell rang and the light showed red when he reached a point just north of the street-car tracks on Hollywood Boulevard and the second bell rang when he reached the northerly edge of the pedestrian crossing in which plaintiff was walking; that it had been raining a little and the right-hand side of his windshield had a few drops of rain on it; that he did not see plaintiff until he struck him and that plaintiff was inside the pedestrian crossing.

The witness Carmack, who was driving north on Vermont Avenue at the time, testified that as he approached the intersection at the south line of Hollywood Boulevard, the signal for north-south traffic on Vermont Avenue turned to red; that just as he stopped he saw defendant's automobile coming south through the intersection opposite the safety island, hereinbefore described, at a point about twenty feet north of the prolongation of the northerly curb line of Hollywood boulevard; that five seconds later he heard a crash and "the man (referring to plaintiff) flew right by my left shoulder".

Plaintiff testified that he was crossing Vermont Avenue from west to east and that he had reached a point slightly west of the center line thereof, and that he was within the pedestrian crossing, as marked on the street and as shown on the map, when the collision occurred; that he saw defendant's automobile twice when it was north of the pedestrian crossing, within the lines of which he was walking, and again just before it struck him; that it was traveling at a speed of 35 or 40 miles an hour. Plaintiff also testified that when he left the curb and proceeded northeasterly over the first thirty feet of the pedestrian crossing, the signal on the loading zone on Hollywood Boulevard directing east-west traffic was *red*, and the signals with respect to north-south traffic on Vermont were *green*; that when he reached the end of the thirty feet and started to walk southeasterly in the pedestrian crossing across Vermont Avenue proper, the bell rang and the signal for east-west traffic showed green, and that the signals for north-south traffic on Vermont Avenue were red.

Appellant urges that plaintiff was guilty of contributory negligence in not looking for automobiles coming south on Vermont Avenue even though the signals were in his favor, and that "the accident would not have occurred had plaintiff remained on the sidewalk in accordance with the

Code and Ordinance''. Further, that appellant was guilty of negligence *per se* because he started from the curb and traversed a large part, if not all of the first thirty feet of the pedestrian crossing while the east-west traffic signal was red.

The first thirty feet of the said pedestrian crossing running northeasterly from the southwest corner of the intersection lies wholly within the south one-half of Hollywood Boulevard and is directly in the path of traffic on that boulevard as such traffic approaches Vermont Avenue from the west, while it is entirely free from traffic traveling south on the west side of Vermont Avenue. Under these circumstances, and taking into consideration the complicated design of the intersection, it was a question of fact for the jury to determine whether or not plaintiff was guilty of negligence when he traversed the said thirty feet at a time when east-west traffic was stopped on Hollywood Boulevard. Owing to the fact that the said thirty-foot strip lies wholly within the south half of Hollywood Boulevard and connects with and forms a part of the pedestrian zone across Hollywood Boulevard running northerly parallel with the westerly side of Vermont Avenue, and also joins with and actually constitutes a part of the pedestrian crossing across Vermont Avenue, the jury must have believed that plaintiff was not negligent when he traversed the said thirty feet while the east-west traffic signal was red. This is further strenghtened by the evidence that plaintiff was not struck until he reached a point near the center line of Vermont Avenue at a time when it is conclusively shown that the signals governing north-south traffic on that street were red. Plaintiff testified that he was looking to the north, as well as to the south, as he crossed Vermont Avenue with the signal in his favor, and that he saw defendant's automobile three times before it finally struck him. ''There seems to be a general rule running through the cases where a pedestrian, or one standing on a highway, is injured by an automobile, which usually determines whether the question of contributory negligence is one of law, or of fact. Where the injured party fails to look at all, or looks straight ahead without glancing to either side, or is in a position where he cannot see, or in other words, where he takes no precaution at all for his safety, it is usually a question for the court. Where he looks but does not see an approaching

automobile, or seeing one, erroneously misjudges its speed or for some other reason assumes he could avoid injury to himself, the question is usually one for the jury.'' (2 Cal. Jur. Supp. 379; *Shaw* v. *Robertson,* 8 Cal. App. (2d) 520, 522 [48 Pac. (2d) 128]; *Wickman* v. *Lowenstein,* 136 Cal. App. 279, 283 [28 Pac. (2d) 681]; *Rapp* v. *Southern Service Co.,* 116 Cal. App. 699 [4 Pac. (2d) 195]; *White* v. *Davis,* 103 Cal. App. 531, 542 [284 Pac. 1086].) Therefore, the questions here presented being questions of fact, the decision of the jury thereon is final.

■ On the question of defendant's negligence, he admitted that the north-south traffic signals showed red when he was only part way through the intersection, the exact point being in conflict. If, as witness Carmack testified, defendant was opposite the safety island near the northwest corner of the intersection when the signal changed to red, he could have stopped there and waited for traffic to clear in his favor. The evidence as to the speed at which defendant was operating his automobile is also in conflict, but it is shown that the right-hand corner of his windshield had a few drops of water on it. ''Even though the operator of an automobile may be rigidly within the law, he still remains bound to anticipate that he may meet persons at any point of the street and he must, in order to avoid the charge of negligence, keep a proper lookout for them and keep his machine under such control as will enable him to avoid a collision with another person using proper care and caution and if the situation requires, he must slow up and stop.'' (*Brush* v. *Kurstin,* 11 Cal. App. (2d) 258 at 261 [53 Pac. (2d) 777], citing *Rush* v. *Lagomarsino,* 196 Cal. 308, 317 [237 Pac. 1066]; *Reaugh* v. *Cudahy Packing Co.,* 189 Cal. 335, 340 [208 Pac. 125].)

As to appellant's third point, we are convinced that the evidence was sufficient to support the verdict and the judgment against defendant, and that there was no error on the part of the trial court when it denied his motions for new trial and for judgment notwithstanding the verdict.

Appellant finally complains of error by the court in giving of certain instructions to the jury and in refusing to give certain requested instructions. Taking all of the instructions given and considering each as a part of the whole, it is apparent that the jury was fully and fairly instructed as to the

law applicable to the facts in issue, and also that the instructions which were requested and refused by the court were properly covered by the instructions which were given.

The motion to dismiss is denied. The judgment and order are affirmed.

White, J., concurred.

DORAN, J., Dissenting.—I dissent for the reason that in my opinion there is no evidence whatsoever of any negligence on the part of the defendant. He was operating his automobile at a lawful rate of speed. He had entered and proceeded into the intersection some distance before the signal changed against him. Under such circumstances it was lawful for him to continue through. His automobile was stopped within a car's length of the point of impact.

If the complicated character of the intersection imposed a greater degree of care, it applied equally to the plaintiff and to the defendant. Plaintiff testified that he saw defendant's car three times as it approached him, before he was struck. Assuming, for the sake of argument, but not conceding, that defendant was guilty of negligence even to a small degree, plaintiff's conduct under the circumstances amounted to contributory negligence.

Defendant's motion for judgment notwithstanding the verdict should have been granted.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 21, 1938.

Curtis, J., voted for a hearing.