[Civ. No. 12738. Second Dist., Div. One. Oct. 31, 1941.]

MARGARET YOUNG, Respondent, v. GEORGE TASSOP
et al., Appellants.

C. F. Jorz for Appellants.

P. E. Cavaney for Respondent.

SHAW, J. *pro tem.*—The plaintiff sued to recover damages for personal injuries resulting to her from a collision between herself and an automobile driven by the defendant Tassop, for whose acts in that respect the other defendant, it is conceded, was legally responsible. The case was tried by a jury and judgment in favor of plaintiff was entered on their verdict, from which both defendants appeal.

Some of the facts are not in dispute; regarding others there was much conflict in the evidence. Taking the view of the evidence most favorable to the judgment, as we must on appeal, we find it sufficient to show the following facts. The accident occurred in the latter part of the afternoon of September 3, 1938, at the intersection of Broadway and Seventh Street in the city of Los Angeles. These streets cross at right angles and at the four corners of their intersection there were traffic signals which controlled traffic by the alternate display of the words "Stop" and "Go" on semaphore arms, and by bells, referred to as the "first bell," which rang when the arms displaying "Stop" for traffic on either street came up, and the "second bell," which rang as the arms displaying "Go" for traffic on the other street arose. Plaintiff was walking south on the west side of Broadway, and as she came to Seventh Street the signal directed her to stop, which she did, waiting on the curb for the signal to change.

Many other persons were also waiting there. Plaintiff stood on the curb waiting until after the "second bell" rang, then looked east and west and saw no "cars or anything, only people were crossing north and south," stepped down from the curb and started to cross Seventh Street within the lines of a marked crosswalk. Many others started south across Seventh Street at about the same time. When she got about eight feet from the curb she was hit and knocked down by the car driven by defendant Tassop, receiving the injuries for which she sues. Defendant Tassop was driving west along Seventh Street and entered this intersection from the east at a time when the signal applicable to traffic on that street showed "Stop," and came through the intersection at a speed of 20 to 25 miles per hour, without sounding his horn. People ran to get out of his way. Plaintiff did not see the car and Tassop did not see plaintiff before the accident.

At the time of this occurrence, a Los Angeles city ordinance regulating traffic provided that, when the word "Stop" was displayed by a traffic signal, vehicles facing the signal should stop before entering the nearest crosswalk and remain standing until "Go" was shown by the signal, and that no pedestrian should enter the roadway until "Go" was shown.

■ From the facts above stated the jury could properly conclude that the defendant Tassop was negligent in several respects: he violated the ordinance above mentioned by entering the intersection when the signal was against him; he traveled across the intersection at a speed greater than was reasonable or prudent under the existing conditions, in violation of section 510 of the Vehicle Code; and he failed to sound his horn "when reasonably necessary to insure safe operation", thus violating section 671 of the Vehicle Code.

■ Defendants point to certain evidence which shows, as they claim, both that the defendant Tassop was not negligent, and that the plaintiff was negligent. There was a police officer on duty at the intersection of Seventh Street and Broadway when this accident happened, and he testified: "When the first bell . . . rang the car (Tassop's) . . . was practically in the center of Broadway heading west. I saw this lady (plaintiff) step off the curb and I held my hand up and blew my whistle for her to stop so the car could clear the intersection, and there were a lot of other people

standing on her left, they stopped, but she kept on going. . . . I motioned to the car to come on . . . his front wheels had just crossed the most westerly line of the safety zone when this lady run into his right front fender, the bumper.'' Defendant Tassop testified to the same effect as to the officer's directions to him, and another witness for defendant gave similar testimony regarding the officer's directions to plaintiff and the other pedestrians. Defendants refer to this testimony as undisputed. Plaintiff and her only other witness who was present at the time of the accident did not mention the matters covered by this testimony, nor were they questioned in regard to them. But it does not follow that the jury were required to accept this testimony as true.

The rule in this respect was stated in *Davis* v. *Judson* (1910), 159 Cal. 121, 128 [113 Pac. 147], as follows: ''While it is the general rule that the uncontradicted testimony of a witness to a particular fact may not be disregarded, but should be accepted by the court as proof of the fact, this rule has its exceptions. The most positive testimony of a witness may be contradicted by inherent improbabilities as to its accuracy contained in the witness's own statement of the transaction; or there may be circumstances in evidence in connection with the matter, which satisfy the court of its falsity; the manner of the witness in testifying may impress the court with a doubt as to the accuracy of his statement and influence it to disregard his positive testimony as to a particular fact; and as it is within the province of the trial court to determine what credit and weight shall be given to the testimony of any witness, this court cannot control its finding or conclusion denying the testimony credence, unless it appears that there are no matters or circumstances which at all impair its accuracy.'' This rule has been approved and followed ever since. (*Caldwell* v. *Weiner* (1928), 203 Cal. 543, 546 [264 Pac. 1110]; *Tretheway* v. *Tretheway* (1940), 16 Cal. (2d) 133, 138 [104 Pac. (2d) 1033]; *Burke* v. *Bank of America etc. Assn.* (1939), 34 Cal. App. (2d) 594, 599 [94 Pac. (2d) 58].)

One matter discrediting the testimony of a witness is that, if the jury find a witness wilfully false in one material part of his testimony, on which he is contradicted, they may disbelieve his testimony in other respects, though not

contradicted. (Section 2061, Code of Civil Procedure, subd. 3; *Rolland* v. *Porterfield* (1920), 183 Cal. 466, 470 [191 Pac. 913]; *Estate of Friedman* (1918), 178 Cal. 27, 32 [172 Pac. 140]; *Treat* v. *Treat* (1915), 170 Cal. 329, 333 [150 Pac. 53, 57]; *Robinson* v. *Thornewill* (1931), 112 Cal. App. 498, 500 [297 Pac. 28].) The police officer referred to was contradicted on material points. He testified positively that plaintiff stepped off the curb and started across the street on the first bell; whereas plaintiff testified with equal positiveness that she did not start until after the second bell. He also testified that defendant's car proceeded at a speed of between six and ten miles per hour, while plaintiff's witness testified that its speed was twenty to twenty-five miles per hour. He further testified that defendant Tassop entered the intersection while the signal applicable to him showed "Go," but plaintiff's witness testified that Tassop entered when the signal said "Stop." The defendants' witness who corroborated the officer regarding his directions to plaintiff testified that plaintiff started on the first bell, which was in conflict with plaintiff's testimony already referred to. The jury were therefore at liberty to reject all the testimony of these two witnesses for defendants, and apparently they did so. The defendant Tassop's testimony in corroboration of the police officer could be rejected by the jury by reason of his interest in the result of the case as a defendant. (*Estate of McCarthy* (1932), 127 Cal. App. 80, 83, 84 [15 Pac. (2d) 223]; *Vitelli* v. *Stanbrough* (1931), 118 Cal. App. 120, 123 [4 Pac. (2d) 818].)

 We must presume, therefore, in support of the verdict, that the jury rejected the whole incident narrated in the testimony of the police officer. Excluding it from consideration, we have a case, as we must view it on appeal, where the plaintiff, before leaving her place of safety on the curb and starting across the street, looked in the direction from which danger was to be anticipated, that is, to the east, and seeing no vehicles approaching, and hearing no automobile horn, started across. The rule applying to such a situation, as stated in *White* v. *Davis* (1930), 103 Cal. App. 531, 542 [284 Pac. 1086], is: "There seems to be a general rule running through the cases where a pedestrian, or one standing on a highway, is injured by an automobile, which usually determines whether the question of contributory

negligence is one of law, or of fact. Where the injured party fails to look at all, or looks straight ahead without glancing to either side, or is in a position where he cannot see, or in other words, where he takes no precaution at all for his own safety, it is usually a question for the court. Where he looks but does not see an approaching automobile, or seeing one, erroneously misjudges its speed or distance, or for some other reason assumes he could avoid injury to himself, the question is usually one for the jury.'' This rule has been approved and followed in many later cases and is conceded by defendants here to be correct. (See *Varner* v. *Skov* (1937), 20 Cal. App. (2d) 232, 237 [67 Pac. (2d) 123]; *Reichle* v. *Hazie* (1937), 22 Cal. App. (2d) 543, 545 [71 Pac. (2d) 849]; *Lowell* v. *Harris* (1937), 24 Cal. App. (2d) 70, 84 [74 Pac. (2d) 551]; *Welch* v. *Sink* (1937), 24 Cal. App. (2d) 231, 235, 236 [74 Pac. (2d) 832].)

Defendants contend, however, that certain testimony given by plaintiff here shows that plaintiff looked only from a position where she could not see, and thus establishes contributory negligence as a matter of law. Her testimony was that there were people standing on the curb to her left when she looked, but that ''I could see to Broadway from where I was standing. That was as far as I could see.'' She appears to have been near the west side of the crosswalk at the time, and her reference to Broadway could properly be understood as referring to space somewhere east of the crosswalk. Defendants state in their opening brief that this crosswalk is 36 feet wide, and this statement is not disputed by plaintiff. We have not found any testimony in the record on this point, but the crosswalk must have been of considerable width to accommodate the numerous persons who are said to have been in it, and we accept this statement of its width as correct. Plaintiff also testified that, ''Everybody was crossing when I started; they were going both ways, north and south''; that she saw people crossing to her left. Under these circumstances she might have concluded that no automobile which she had not seen or heard would come suddenly upon her, and that an apparently clear space of approximately 35 feet was sufficient to enable her to cross in safety. She did take some precautions for her safety, and the question whether she exercised due care was one for the jury. The fact that when she looked her view was some-

what obstructed by other pedestrians does not, alone, convict her of negligence. (*Reaugh* v. *Cudahy Packing Co.* (1922), 189 Cal. 335, 342 [208 Pac. 125].)

Plaintiff testified that after she started across she looked straight ahead. Defendants argue that this shows negligence on her part. But a pedestrian crossing under such circumstances is not under a continuing duty to look to the left; he is only under a continuing duty to use ordinary care. (*Salomon* v. *Meyer* (1934), 1 Cal. (2d) 11, 15 [32 Pac. (2d) 631]; *King* v. *Unger* (1938), 25 Cal. App. (2d) 632, 634 [78 Pac. (2d) 255].) In this connection defendants cite the decision of this court in *Flores* v. *Los Angeles Railway Corp.* (1936), 15 Cal. App. (2d) 576 [59 Pac. (2d) 856], but we do not regard it as controlling here. In that case it was held that " . . . appellant Lupe Flores was negligent in stepping up to the tracks of respondent company directly in front of an oncoming street car which was plainly in view at the time she came up to the track, if she had chosen to glance in its direction." (*Flores* v. *Los Angeles Railway Corp., supra*, p. 579.) The plaintiff there stood on the curb at the same corner where plaintiff in this case stood, waiting for the traffic signal to change so that she could cross Seventh Street going south, and when it changed she walked south and into the path of a westbound street car which was just clearing the intersection, having entered it with the signal. This court held that she was guilty of contributory negligence as a matter of law, but the opinion shows that the decision was based upon the following facts, besides those just stated: a police officer who was on duty at that point signaled the car to proceed and likewise held up his hand as a signal to the pedestrians on the northwest corner where appellant Lupe Flores was, to wait and allow the street car to pass; appellant Lupe Flores testified she did not look once in either direction for anticipated danger; and the speed of the street car was only five to ten miles per hour. No corresponding facts are to be considered by us in the instant case. The plaintiff in the Flores case walked from curb to car track and did not look at all for danger; the street car was in plain sight and going very slowly.

Here the plaintiff did look before leaving the curb, saw no cars coming and heard no horn sounded, and saw other pedestrians crossing to her left, who would naturally

tend to slow the progress of any approaching car. She then started across, walking only eight feet, and, as she said, "the first thing I knew I was knocked down." It does not appear that the automobile was in plain sight when she looked; other people crossing the street may have obscured her view of it. At the speed it was going it must have been beyond her clear field of view when she looked. The question whether, under all the circumstances, she was negligent in not looking again to her left while she walked this eight feet is one on which there is room for an honest difference of opinion between men of average intelligence, and it is therefore one of fact on which the jury's finding is conclusive. (*Salomon* v. *Meyer, supra,* 1 Cal. (2d) 15.)

█ Defendants contend that plaintiff's counsel was guilty of prejudicial misconduct in seeking to get before the jury evidence that defendant Tassop did not visit plaintiff at her home after the accident. Objections to two questions on the point were sustained; the answers showing that he did not visit her, given before the rulings, were stricken out and the jury were instructed to draw no inference from them. While it may have been misconduct to ask, and especially to repeat after an adverse ruling, such a question, any possible prejudicial effect of such misconduct was averted by the admonition given by the court to the jury. (*McCollum* v. *Barr* (1918), 38 Cal. App. 411, 429 [176 Pac. 463]; *Elliott* v. *Federated F. & V. Growers, Inc.* (1930), 108 Cal. App. 412, 418 [291 Pac. 681].)

█ Defendants also complain of three answers by plaintiff giving hearsay testimony regarding her physical condition, made in response to questions not calling for such answers. In two of these instances the answers were stricken out on defendants' motion and the jury were instructed to disregard them. In the other instance no such motion was made. The matters referred to were not important, and we cannot see how any prejudice accrued to defendants from these incidents.

The appeal from the order denying a new trial is dismissed. The judgment is affirmed.

York, P. J., and White, J., concurred.