[L. A. No. 19343.   In Bank.   Aug. 28, 1945.]

HELEN KIRK, Appellant, v. LOS ANGELES RAILWAY CORPORATION (a Corporation), Respondent.

Entenza & Gramer and John J. Craig for Appellant.

Gibson, Dunn & Crutcher and E. H. Chapman for Respondent.

CARTER, J.—Plaintiff was nonsuited in an action for personal injuries claimed to have been received as the result of defendant's negligence.

Broadway, a north-south street, crosses at right angles Seventh, an east-west street in the city of Los Angeles. Both streets have double streetcar tracks on them. The traffic at the intersection is controlled by a traffic light. At 11 o'clock at night defendant was operating a southbound streetcar on its west track on Broadway. Plaintiff, a pedestrian, was proceeding west across Broadway on the south side of Seventh in the middle of the lane marked for pedestrians. She was accompanied by two men, one on each side of her. When she left the east curb on Broadway the traffic signals were in her favor. Two lines of cars were waiting on her left for a change of signal. When she was between the rails of the east streetcar tracks the east-west traffic signal changed to "Stop." A few seconds later, and when she was close to the west tracks, she saw the streetcar approaching. One of her companions grasped her arm, calling her attention to the approach of the streetcar. Her purse, which she was carrying under her right arm, fell to the street some two feet west of the west tracks. In plaintiff's language the following occurred: "Q. What happened to the contents of the purse? A. They were scattered about. Q. Did you continue on across the street after the purse was knocked out from under your elbow? A. Well, without pausing, I attempted to retrieve the purse. Q. How did you do that, what did you do? A. Well, I just bent slightly and grabbed it up as I went. Q. Did you ever succeed in getting it in your hand? A. I don't know, I was knocked unconscious. The Court: You say you grabbed it up or grabbed at it? A. Grabbed at it. Q. By Mrs. Gramer: What movement did you make in grabbing at it; were you still in motion, your legs still moving? A. I was. Q. Did you ever stop or stand still even for a split second? A. Not to my recollection." The right front of the streetcar struck plaintiff's right hip while she was in a stooping position. The streetcar was traveling 10 to 12 miles per hour when it was crossing Seventh Street. Plaintiff's two companions reached the west curb of Broadway in safety.

A pedestrian, Walter S. Walters, who was crossing at the same time and place as plaintiff, testified that he was on the west rail of the east tracks when the east-west signal changed to red. At that time he saw the streetcar moving over the crossing, meaning about the middle or a "little" south of the tracks on Seventh Street, at 10 to 12 miles per hour. While there is evidence that the streetcar did not leave the north line of Seventh Street until the north-south signal signified "Go," yet it may be inferred from the foregoing evidence that it "jumped the gun on the signal." Walters stated that he saw the east-west signal change and at that time the streetcar was at or near the middle of the intersection traveling at 10 to 12 miles per hour. Inasmuch as there would be an interval between the change to red of the east-west signal and to green of the north-south signal, it must be clear that the streetcar had not waited for the "Go" sign. Also, plaintiff testified that in a few seconds after the time the east-west signal changed, the streetcar was in the intersection. Moreover, in view of the amount of traffic on the street, it was incumbent upon defendant to allow a reasonable time for the street to clear of pedestrians who had started across the street with the signal in their favor, but had been caught in the intersection between a change of signals. Considering all of those factors, including the speed of the car, it cannot be doubted that the question of whether or not defendant was negligent should have been submitted to the jury.

It is well settled that it is the duty of the trial court to deny a motion for a nonsuit at the close of plaintiff's case, "if there is . . . any substantial evidence, which, with the aid of all legitimate inferences favorable to the plaintiff, tends to establish the averments of the complaint, or, in other words, where the plaintiff's evidence is sufficient to support a judgment on the verdict. It should deny a nonsuit even where there is a conflict in the evidence and some evidence tends to sustain the plaintiff's case, or when the evidence of the plaintiff is such that different conclusions can reasonably be drawn therefrom. If there is any doubt, it is the duty of the court to let the case go to the jury." (9 Cal.Jur. 558-9.)

The uniform rule which an appellate court should follow in disposing of an appeal from a judgment of nonsuit is, that the court must view the evidence in the light most favorable to appellant, must disregard all inconsistencies and

draw only those inferences from the evidence which can reasonably be drawn which are favorable to appellant. (*Union Construction Co.* v. *Western Union Telegraph Co.,* 163 Cal. 298 [125 P. 242]; *Gregg* v. *Western Pac. R. R. Co.,* 193 Cal. 212 [223 P. 553]; *Ezmirlian* v. *Otto,* 139 Cal.App. 486 [34 P.2d 774].)

Defendant urges that plaintiff was contributively negligent as a matter of law in three respects. (1) In looking in the direction of the streetcar as she left the east curb of Broadway, but nevertheless proceeding even though the car must have then been in motion if it violated the traffic signal; (2) proceeding in front of the car when it was approaching after she was on the west-east track; (3) in stooping to retrieve her purse.

In considering those contentions, the rule, as recently stated by this court in *Anthony* v. *Hobbie,* 25 Cal.2d 814, 818 [155 P.2d 826], is applicable:

"But cases in which it can be said that the negligence of plaintiff contributes proximately to the accident as a matter of law are rare. The rule has been stated in various ways in a legion of cases, that contributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and none other; that where there are different inferences that may be drawn, one for and one against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion."

Plaintiff was justified in leaving the east curb of Broadway inasmuch as the traffic signal was in her favor. Whether or not she should have observed that the streetcar had started forward at that time, and if it had, whether she was aware of the danger, were for the jury to decide. Moreover, a pedestrian while he is bound to exercise due care when crossing at an intersection in the crosswalk with the traffic signal in his favor, yet he has the right of way and may assume that the traffic signal will not be violated by traffic crossing his path, and the issue of his negligence is for the jury. (See *Lowell* v. *Harris,* 24 Cal.App.2d 70 [74 P.2d 551]; *Welch* v. *Sink,* 24 Cal.App.2d 231 [74 P.2d 832]; *King* v. *Unger,* 25 Cal.App.2d 632 [78 P.2d 255]; *Salomon* v. *Meyer,* 1 Cal.2d 11 [32 P.2d 631]; *Collom* v. *Bloch,* 70 Cal.App. 33 [232 P. 486]; *Whitelaw*

v. *McGilliard,* 179 Cal. 349 [176 P. 679]; *Walker* v. *Mason,* 109 Cal.App. 361 [293 P. 125]; *Schulman* v. *Los Angeles Ry. Corp.,* 44 Cal.App.2d 122 [111 P.2d 924]; *Ladas* v. *Johnson's B. & W. Taxicab Co.,* 43 Cal.App.2d 223 [110 P. 2d 449]; *Sanker* v. *Humborg,* 48 Cal.App.2d 203 [119 P.2d 431]; *Torrey* v. *Nelson,* 51 Cal.App.2d 191 [124 P.2d 336]; *Reed* v. *Stroh,* 54 Cal.App.2d 183 [128 P.2d 829]; *Connolly* v. *Zaft,* 55 Cal.App.2d 383 [130 P.2d 752]; *Young* v. *Tassop,* 47 Cal. App.2d 557 [118 P.2d 371]; *Lang* v. *McKinney Blueprint Paper Co.,* 91 Cal.App. 84 [266 P. 616]; *Pinello* v. *Taylor,* 128 Cal.App. 508 [17 P.2d 1039]; *Nightingale* v. *Birnbaum,* 11 Cal.App.2d 34 [52 P.2d 955]; *Gnesa* v. *San Francisco,* 40 Cal.App.2d 640 [105 P.2d 376]; *Kuhn* v. *San Francisco,* 13 Cal.App.2d 641 [57 P.2d 147].) ▮ When a pedestrian is in or about the middle of the street he is crossing, and the traffic signal changes against him, he may assume that due care will be exercised by the released cross traffic as to pedestrians so trapped. ▮ Whether a mistake in judgment by a pedestrian when crossing a street, as to the speed and danger of an approaching vehicle constitutes contributory negligence, is a question for the jury. (*Lowell* v. *Harris,* 24 Cal.App.2d 70, 84, 85 [74 P.2d 551]; *Welch* v. *Sink,* 24 Cal.App.2d 231 [74 P.2d 832]; *Ladas* v. *Johnson's B. & W. Taxicab Co.,* 43 Cal.App.2d 223, 229 [110 P.2d 449]; *Sanker* v. *Humborg,* 48 Cal.App. 2d 203 [119 P.2d 431]; *Nightingale* v. *Birnbaum,* 11 Cal.App.2d 34 [52 P.2d 955]; *Gallardo* v. *Luke,* 33 Cal.App. 2d 230 [91 P.2d 211].) ▮ In the instant case whether the acts of plaintiff in leaving the curb to make the crossing, and her continuation after she was part way across, and the signal changed, and she saw the car approaching, were compatible with the conduct of a person of ordinary prudence, was for the jury to decide. She was at a busy intersection. There were automobiles behind her waiting to proceed across the course she had completed. When the signal changed she was confronted with the dilemma of whether it was wiser to retreat and run the risk of injury from the cars waiting to cross the path she had already traveled, being caught between two streams of traffic, or to proceed on across the street. She, as well as those accompanying her, chose the latter course. Her companions reached the west curb in safety. She was two feet past the tracks on which the car was approaching, and as a person of ordinary prudence, she could have concluded that

she had reached a place of safety. Even though her judgment may have been faulty, that does not necessarily establish her negligence.

Defendants rely upon such cases as *Gore* v. *Market Street Ry. Co.*, 4 Cal.2d 154 [48 P.2d 2]; *Anderson* v. *Market Street Ry. Co.*, 116 Cal.App. 282 [2 P.2d 529]; and *McHugh* v. *Market St. Ry. Co.*, 29 Cal.App.2d 737 [85 P.2d 467]. Each case must be viewed according to its particular circumstances. In the cited cases there was no obedience to a traffic signal by the pedestrian or disobedience by defendant as in the instant case. Nor is the instant case one in which the pedestrian blindly and without any care for her own safety walked into the path of an oncoming vehicle, the result of which must necessarily be disaster.

Whether the act of plaintiff in stooping to retrieve her purse was contributory negligence should have been submitted to the jury. She testified that even though she stooped, she continued her forward progress, and being two feet or more past the west tracks, she might, as a person of ordinary prudence, have considered herself in a safe position, and she was very near to such a haven inasmuch as the west steps on the west front side of the car struck her hip. Under those circumstances it was a jury question whether the act of retrieving the purse was such as would be performed by a person of ordinary prudence. It could be reasoned that such act was an instinctive unthinking effort to preserve property which would be reasonable to expect of a reasonably prudent person having due regard for his safety. It is not a case of momentary forgetfulness which is not induced by some disturbing event, such as existed in *Reynolds* v. *Los Angeles Gas & Electric Co.*, 162 Cal. 327 [122 P. 962]; and *Brett* v. *Frank & Co.*, 153 Cal. 267 [94 P. 1051]. Rather, it was an instinctive reaction or act on sudden impulse which we are unable to say was out of character for a person of ordinary prudence. It is the rule that "Even forgetfulness of a known danger will not operate to prevent a recovery, for to forget is not negligence unless it shows a want of ordinary care. Generally the question is one for the jury." (*Neel* v. *Mannings, Inc.*, 19 Cal. 2d 647, 656 [122 P.2d 576].) Moreover, there were disturbing factors, that is, the busy intersection, the change in traffic signals, the oncoming streetcar, the sudden dropping of the purse to the street. The situation presented is analogous to acts in emergencies. Defendant's negligence created a

dangerous situation in which plaintiff chose to hurry across in front of the car. Her companion grasped her arm. In the process her purse fell to the ground. ▮▮▮ "Accordingly, where a situation requires an immediate choice between alternative courses of conduct, negligence may not be inferred from an unwise choice, if a reasonable man, under similar circumstances, would choose similarly. And under such circumstances one may be excused if he loses his presence of mind, momentarily forgets, errs in judgment, or omits cautionary measures which should otherwise have been taken, even though the effect of his conduct is to cause him to encounter the danger sought to be avoided. Whether a person in a position of imminent danger acted reasonably is a question of fact for the jury, but in determining the question, conduct must be viewed in the light of the confusion and excitement of the moment and not in view of the circumstances and surroundings of one not in danger." (19 Cal.Jur. 598.) And the rule has been extended to cover rescue of property. (*Henshaw* v. *Belyea*, 220 Cal. 458 [31 P.2d 348].) The jury could have determined that defendant should have anticipated that pedestrians were in the crosswalk when the car jumped the signal and also that they would react to natural impulses. "The actor is bound to know 'the qualities and habits of human beings and animals and the qualities, characteristics and capacities of things and forces insofar as they are matters of common knowledge at the time and in the community.' " (*Mosley* v. *Arden Farms Co., ante,* p. 213, 217 [157 P.2d 372].) Hence, the jury could have decided that defendant's negligence was the proximate cause of the accident.

The judgment is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.