[Civ. No. 19068.   Second Dist., Div. Three.   Mar. 10, 1953.]

SALLIE JOHNSON, Appellant, v. JOHN F. WARNER et al., Respondents.

ELMORE M. JOHNSON, Appellant, v. JOHN F. WARNER et al., Respondents.

Edward Raiden and J. B. Tietz for Appellants.

Bauder, Gilbert, Thompson & Kelly for Respondents.

WOOD (Parker), J.—Plaintiffs, husband and wife, filed separate actions for damages allegedly sustained as the result of a collision between their automobile and an automobile owned by defendant John F. Warner, and operated by defendant Joanne Marie Warner, a minor. Defendants filed answers in which they denied negligence and alleged, as an affirmative defense, that plaintiff Elmore M. Johnson, who was operating plaintiffs' automobile at the time of the collision, was guilty of contributory negligence. The actions were consolidated for trial. The court found, among other things, that defendant Joanne Marie Warner and the plaintiff Elmore M. Johnson were negligent and that the accident proximately resulted from the negligence of each of said persons. Judgment was for defendants and plaintiffs appeal therefrom.

Appellants contend in effect that the evidence does not support the finding of contributory negligence. Respondents concede that the evidence supports the finding of negligence on the part of Joanne Marie Warner.

The accident occurred about 5:30 p. m. on January 28, 1950, at the intersection of Oxnard and Colfax Avenues in North Hollywood. Oxnard Avenue extends east and west, and Colfax extends north and south. There were boulevard stop signs requiring traffic on Colfax to stop before entering the intersection. There were no boulevard stop signs requiring traffic on Oxnard to stop before entering the intersection. Plaintiffs' automobile was traveling south on Colfax in the inside lane for southbound traffic. The Warner automobile was traveling east on Oxnard in the inside lane for eastbound traffic.

Plaintiff Elmore M. Johnson, hereinafter referred to as plaintiff, testified it was getting dark, there was a misty rain and the streets were wet; the lights of his automobile were on, and the windshield wipers were operating; he made a boulevard stop before he entered the intersection and shifted into low gear; he saw an automobile proceeding northerly on Colfax about 100 feet south of Oxnard; he looked to the east and saw no automobile; he then looked to the west and saw one automobile (Warner's) at a point about 300 feet west of the intersection; the lights of the automobile were on and it was proceeding toward the intersection at a speed

of 30 to 35 miles an hour; plaintiff then proceeded to cross the street; he didn't turn and keep his eyes on the automobile but it was coming toward him; he glanced at the automobile and it was increasing its speed—it was coming at a terrific rate of speed; at this time plaintiff was getting right up to the center of the intersection; plaintiffs' automobile was still in low gear and was traveling about 18 miles an hour; plaintiff pushed the accelerator to the floor board, and the next thing he knew the accident happened; at the time of impact, plaintiffs' automobile had crossed the center line of Oxnard and lacked about 3½ feet of being across the traffic lane in which the Warner automobile was traveling; plaintiff did not sound his horn, swerve right or left, or apply his brakes prior to the accident; when the Warner automobile was about 30 feet from plaintiffs' automobile, plaintiff Mrs. Johnson exclaimed that the car was going to hit them; he was already looking at the Warner automobile at that time, and he was doing his best to get out of the way; he did not attempt to stop because, in his estimation, it would have been more dangerous to try to stop than to try to get across, and he thought he could get across. He testified further that the impact caused the rear of plaintiffs' automobile to swing about so that it was turned around; it then traveled about 45 feet south on Colfax where the rear of the automobile struck the front of a third automobile, a Chevrolet, which was traveling north on Colfax.

Plaintiff Mrs. Johnson testified that it was dark on the night of the accident, it was raining and she could see a glare of lights in the rain—it seemed to her that there were headlights and street lights; she first saw the glare when plaintiffs' automobile was stopped at the boulevard stop sign; the Warner automobile was then a block away; the next time she noticed the automobile it was about 20 feet from plaintiffs and she said: "We are going to get hit."

Barnie Glazer, called as a witness by plaintiffs, testified that he was the driver of the Chevrolet automobile which was struck by plaintiffs' automobile; at the time of the accident it was still light, his automobile headlights were not on and he saw no lights on the other automobiles involved in the accident; when he (witness) was about 150 feet from the intersection, he saw the other automobiles; it was a matter of seconds before the impact of said automobiles; plaintiffs' automobile was going between 10 and 20 miles an hour, it was progressing slowly and did not appear to increase its speed before the impact; the Warner automobile was going approximately

40 miles an hour, it did not swerve and the brakes were not applied; after the impact he did not see plaintiffs' automobile until a split second before it struck his Chevrolet.

Officer Jensen, called as a witness by defendants, testified that he investigated the accident and made a report, and that he talked to the witness Glazer at the scene of the accident. He testified that Glazer said: that as he was slowing down for a boulevard stop on Colfax, he saw an automobile southbound on Colfax and an automobile eastbound on Oxnard; the automobile on Oxnard was traveling at a high rate of speed; he was unable to estimate the speed of either automobile prior to the impact; he was unable to state whether plaintiff made a boulevard stop; the first time he saw plaintiffs' automobile it was in the intersection.

Officer Gough, called as a witness by defendants, testified that he interviewed plaintiff at the scene of the accident and that plaintiff made substantially the following statement: He (plaintiff) had made a complete stop at the boulevard stop sign at the intersection of Oxnard, and shifted into low gear; there were no cars coming in either direction that he could see, so he started up; when he got across into the intersection he saw an eastbound car coming toward him very fast; he was unable to judge how fast the car was coming; it struck the rear of his automobile and that was all he knew about the accident.

Defendant Joanne Warner testified that she first observed plaintiffs' automobile when it was about three car lengths back of the stop sign, at which time her automobile was also about three car lengths from the intersection; she was going about 30 miles an hour; after she saw plaintiffs' automobile she looked to the right on Colfax, then ahead, and then plaintiffs were in front of her and she slammed on her brakes. It was stipulated that the testimony of a passenger in the Warner automobile would be substantially the same as the testimony of the last witness.

As above stated, appellants contend in effect that the evidence does not support the finding of contributory negligence. Whether plaintiff's conduct under all the circumstances constituted contributory negligence was a question of fact for the trial court. ▮ There was evidence that it was dark, it was raining, the streets were wet, and lights caused a glare; that plaintiff (according to testimony of officer) saw no automobile on Oxnard before he entered the intersection, and the first time he saw the Warner automobile was after he was

in the intersection. That evidence was legally sufficient to support a finding of contributory negligence. Furthermore, there was evidence from which it could have been found that plaintiff misjudged the speed of the other automobile and the danger created by it. Plaintiff testified that he proceeded into the intersection when the other automobile was about 300 feet away, and after he was in the intersection he pushed the accelerator to the floor in the belief he could get across the lane in which the other car was traveling. ■ Whether a mistake in judgment ''when crossing a street, as to the speed and danger of an approaching vehicle constitutes contributory negligence, is a question for the jury.'' (See *Kirk* v. *Los Angeles Ry. Corp.*, 26 Cal.2d 833, 839 [161 P.2d 673, 164 A.L.R. 1].)

Appellants contend further that the court erred in refusing to permit their counsel to cross-examine an officer as to a police report from which he refreshed his recollection. As above shown, Officer Gough was called as a witness by defendants. On direct examination, counsel for defendants (apparently reading from the report) asked the officer, if, at the scene of the accident, plaintiff made the °following statement to him: ''I had been driving south on Colfax and came to a stop at the boulevard stop sign at the intersection of Oxnard and made a complete stop, shifted into low gear. There were no cars coming in either direction that I could see, so I started up. When I got into the intersection, I saw an eastbound car coming toward me very fast. I am unable to judge just how fast this car was coming. However, it struck the rear of my car, and that is all I know about the accident. I did not yield to any cars before entering the intersection.'' The officer testified that plaintiff made that statement in substance to him. On cross-examination by plaintiffs' counsel, the officer stated that his memory as to what plaintiff told him was refreshed by his examination of the report. Plaintiffs' counsel then sought to question the officer regarding other portions of the report which did not pertain to the matter involved on direct examination. The court sustained defendants' objections to said questions and stated that only one question had been asked concerning plaintiff's statement and that was asked for the limited purpose of impeaching plaintiff. It is obvious that the question was asked for the purpose of impeachment. As a foundation for impeachment, defendants' counsel had previously asked plaintiff that same question on cross-examination. In reply thereto, plaintiff denied that he said there

were no cars coming in either direction that he could see.
▮ Asking the officer the impeachment question did not constitute a basis for cross-examining him as to matters not within the scope of that question. The court did not err in its ruling.

Appellants also contend in effect that their counsel should have been permitted to cross-examine Officer Jensen regarding statements purportedly made at the scene of the accident and not referred to on direct examination. As above shown, Glazer was called as a witness by plaintiffs. Counsel for defendants, while cross-examining Glazer, said that he would lay a foundation for possible impeachment of the witness, and thereupon he asked him if, at the scene of the accident, he said: "I am unable to estimate the speed of either vehicle prior to the impact, and I am not able to state whether party 2 [plaintiff] made a boulevard stop or not because the first time I saw it it was in the intersection." Glazer replied: "I don't remember that." As above shown, Officer Jensen was called as a witness by defendants. On direct examination counsel for defendants asked him if, at the scene of the accident, Glazer stated as follows: "I was northbound on Colfax. I was slowing down for a boulevard stop sign at Oxnard. I saw a vehicle southbound on Colfax coming towards me. At this time the eastbound vehicle on Oxnard was traveling at a high rate of speed, struck the right rear of vehicle 2 [plaintiffs' vehicle], swinging it in a circle. This car backed into the front of my car. I am unable to estimate the speed of either vehicle prior to the impact and I am not able to state whether party 2 made a boulevard stop or not because the first time I saw it it was in the intersection." The officer replied that he (Glazer) did so state. The officer, on cross-examination by plaintiffs' counsel, testified that his memory was refreshed by reading the police report. Counsel for plaintiffs then asked him regarding a statement allegedly made by Mr. Warner at the scene of the accident, which statement did not appear in the report. The question was whether Mr. Warner asked his daughter Joanne why she did not stop. Defendants' objection to the question was sustained. Counsel for plaintiff stated that he was attempting to impeach the officer by showing that his report was incomplete and inaccurate. ▮ The fact that a police officer's report of an automobile accident does not include statements regarding certain or all things that were said or done at the scene of the accident does not indicate that the statements which are in the report are

not correct, and does not impeach the officer as a witness. The court did not err in its ruling.

The contributory negligence of plaintiff Mr. Johnson is imputed to the other plaintiff, his wife. (See *Dicken* v. *Souther*, 59 Cal.App.2d 203, 210 [138 P.2d 408].)

By reason of the above conclusions, it is not necessary to discuss other contentions.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.