[Civ. No. 29543. Second Dist., Div. Four. Feb. 28, 1967]

MOLLIE L. PHILLIPS, Plaintiff and Appellant v. BARNEY TREIMAN, Defendant and Respondent.

Newell John Gardner for Plaintiff and Appellant.

Gilbert, Thompson & Kelly and Jean Wunderlich for Defendant and Respondent.

JEFFERSON, J.—This appeal is brought by plaintiff from an adverse judgment entered upon a jury verdict in her action for damages for personal injuries suffered when she was struck by defendant's automobile. Plaintiff contends the verdict against her resulted because the jury was not properly instructed on the law applicable to the case.

In a pretrial statement the parties agreed that the accident occurred at 10:30 p.m., on a clear night, at the intersection of Olympic Boulevard and Overland in West Los Angeles; tri-color traffic lights were in operation at the time; the signal was green for north-south traffic on Overland when plaintiff, a 55-year-old woman, entered the marked crosswalk and proceeded to cross Olympic; while she was still within the crosswalk she was struck and severely injured by defendant's automobile which was proceeding eastbound on Olympic in the curb lane.

Plaintiff testified she was walking south on Overland on her way home when she reached the intersection of Olympic and Overland. There was heavy traffic on Olympic. She waited at the corner until the light turned green and, after looking to the left to be sure the cars heading west would stop, she began to walk across Olympic. About the time she reached the center of the street, which had six traffic lanes, she looked to the right and saw oncoming headlights in all three of the eastbound lanes. When she looked back and saw that the light had turned red, she began to walk faster, "almost running." She was almost to the curb on the other side of the street when she was hit. She did not see the car which hit her.

At the time of the accident she was wearing a tan dress, a red jacket and red shoes. She had lived in the area for a year, had crossed this street many times and knew that she had to start across just as the light turned green in order to make it. She thought she walked as fast as an "ordinary person," and, on this night, she was in a hurry to get home because it was late. After the light turned green she had immediately stepped into the street. When she observed the oncoming lights she judged that the cars were each about the same distance from the intersection. She formed no opinions as

to the speed of any of these cars because, "It all happened so fast."

Defendant (called by plaintiff pursuant to Code of Civil Procedure section 2055 [now Evid. Code, § 776]) testified that as he approached the intersection there were cars behind him but none ahead of him in any of the eastbound lanes; he had slowed down to about 20 miles per hour and the light changed from red to green when he was about thre quarters of a block away; from that point on he had a clear view and good visibility of the entire intersection; he saw no one in the intersection; as he entered the intersection still traveling about 20 miles an hour, he had an instantaneous glimpse of a figure running ahead of and to the left of his car; he immediately applied his brakes; the right front of the car struck plaintiff.

One witness, Elwood Demmon, testified he was driving about 40 feet behind defendant as they approached the intersection. He was driving at a speed of about 30 to 35 miles per hour and estimated defendant was driving at the same speed. Demmon saw a flash of red in front of defendant's headlights when he (Demmon) was about 60 feet from the intersection. He saw the stop lights of defendant's car immediately go on and applied his own brakes stopping without skidding.

Another witness, Douglas Murray, was also driving behind defendant at the time of the accident. He was in the lane nearest the double line. He saw plaintiff in the intersection when he was about 300 feet away. He could only see the bottom half of her, and the movement of her legs indicated she was moving quite rapidly. He and defendant were both going about 25 or 30 miles an hour at the time.

A third witness, Marcel Simoneau, was driving west on Olympic in the opposite direction of that traveled by defendant. About 75 feet before Simoneau reached the intersection the traffic light turned green. At this time, he noticed a woman out in the middle of the street. He saw the lights of cars coming in the opposite direction. The woman was "hurrying" or "scurrying" to reach the other side of the street. From the time the signal changed until the accident happened, about three or four seconds had elapsed.

Officer Shepherd investigated the accident. The skid marks of defendant's car began 12 feet east of the west curb line of Overland and ran, approximately in a straight west-to-east direction, to a point where the right rear skid mark ended 11 feet north of the south curb of Olympic. He observed that the

street lights were lit on the southwest and northeast corners. The lights on the other two corners were out, this being the pattern in which the other street lamps in the vicinity on Olympic were lit. In his opinion the lighting at the intersection was poor. He timed the phases of the traffic signals and found the north-south signal was green for 19 seconds and yellow for 3 seconds. During this 22-second period the east-west signals were red. He observed that Olympic Boulevard is an extremely wide street where it is crossed by Overland, measuring 81 feet in width from curb to curb. He found that at a "normal, leisurely" pace, if he left the curb immediately when the signal turned green, he reached the south sidewalk as the signal turned red. At the scene of the accident a witness, Mr. Simoneau, had told him that, after the pedestrian had reached about the middle of the street, she started to run to the south side and appeared to look straight ahead and not at the approaching cars. (In his testimony, Simoneau indicated, when questioned in regard to his statement to the officer, that he did not have his eyes on her continuously after she started to run.)

Defendant raised the defense of contributory negligence at the trial and the court gave instructions on such defense. The court refused to give instructions requested by plaintiff on the doctrine of "imminent peril."

Plaintiff maintains that no evidence was presented to support a finding that she was contributorily negligent, and, consequently, that the instructions on contributory negligence should not have been given. She further maintains that instructions on imminent peril were required and the court committed prejudicial error in refusing to give those submitted.

■ Well established is the rule that a party is entitled to an instruction on his theory of the case, ". . . if it is reasonable and finds support in the pleadings and evidence or any inference which may be properly drawn from the evidence." (2 Witkin, Cal. Procedure (1954) Trial, § 52, p. 1780; *Grinstead* v. *Krushkhov,* 228 Cal.App.2d 793, 795 [39 Cal.Rptr. 812].)

■ Under the rules of the road it is clear that plaintiff had the right-of-way when the accident occurred. The applicable code section is Vehicle Code section 21451. It provides:

*"Green or 'go.'* Green alone or 'go' on an official traffic control signal means that:

"(a) Vehicular traffic facing the signal shall proceed straight through or may turn right or left . . . . But vehicular

traffic, including vehicles turning right or left, shall yield the right-of-way to other vehicles and to pedestrians which were lawfully within the intersection or an adjacent crosswalk at the time such signal was first exhibited.

"(b) Pedestrians facing the signal may proceed across the roadway within any marked or unmarked crosswalk. . . ."

It must be recognized however, that even with the right-of-way, a pedestrian is nevertheless required to exercise due care in crossing a street. (*Parsekyan* v. *Thompson*, 208 Cal.App.2d 848 [25 Cal.Rptr. 691].) As the court said in *Figlia* v. *Wisner*, 150 Cal.App.2d 109, 112 [309 P.2d 832], ". . . it is the duty of a pedestrian to exercise reasonable care while crossing a street in a marked crosswalk and to continue to be alert and to safeguard against injury and such duty continues throughout his passage. [Citations.]" Whether or not a pedestrian is guilty of contributory negligence ". . . is ordinarily a question of mixed fact and law and may be determined as a matter of law only if reasonable men following the law can draw but one conclusion from the evidence presented. [Citations.]" (*Gray* v. *Brinkerhoff*, 41 Cal.2d 180, 183-184 [258 P.2d 834].)

We cannot say that the evidence presented in this case establishes as a matter of law that plaintiff was not negligent. The evidence would support a finding either way. Consequently, defendant was entitled to have the issue of contributory negligence presented to the jury.

▆▆▆ Plaintiff's second contention, that the court erred in refusing to give instructions on imminent peril, is meritorious. Plaintiff requested this instruction:

"You are instructed that a person who, without negligence on her part, is suddenly and unexpectedly confronted with peril arising from either the actual presence or the appearance of imminent danger to herself or to others, is not expected nor required to use the same judgment and prudence that is required of her in the exercise of ordinary care in calmer and more deliberate moments. Her duty is to exercise only the care that an ordinarily prudent person would exercise in the same situation. If at the moment she does what appears to her to be the best thing to do, and if her choice and manner of action are the same as might have been followed by an ordinarily prudent person under the same conditions, she does all the law requires of her, although in the light of after-events, it should appear that a different course would have been better and safer." (Taken from B.A.J.I., No. 137.)

 Where the evidence is susceptible to a construction that the party was free from negligence up to the time a sudden danger confronted him, it is error to fail to give an instruction on imminent peril if requested in proper form. (*Grinstead* v. *Krushkhov, supra,* 228 Cal.App.2d 793, 795.)

 That plaintiff found herself in a position of imminent peril cannot seriously be questioned. It would be hard to conjure up a more perilous situation to find oneself in; halfway across a busy undivided Los Angeles intersection, on foot, at night, when the signal changes and headlights indicate fast approaching automobiles bearing down on the intersection. There was ample evidence that plaintiff was free from negligence up to this time. The instruction requested was proper and clearly called for by the facts.[1] (See *Kirk* v. *Los Angeles Ry. Corp.,* 26 Cal.2d 833, 841 [161 P.2d 673, 164 A.L.R. 1]; *Grinstead* v. *Krushkhov, supra,* 228 Cal.App.2d 793; *Parsekyan* v. *Thompson, supra,* 208 Cal.App.2d 848, 851.)

The instruction was submitted to the court by plaintiff after presentation of the evidence was completed, but one day prior to the day upon which the jury was instructed. Plaintiff's counsel raised the issue of imminent peril in his argument. The court noted on the instruction that it was refused because "the requirements of section 607a Code of Civil Procedure have been disregarded."

Prior to a 1957 amendment, section 607a contained the provision that if any proposed instruction was delivered to the court at a time later than provided for, it could be summarily disregarded with the court's notation of such fact upon the face of the proposed instruction. The 1957 amendment deleted this language and added a provision authorizing the court to consider additional instructions raised by issues touched on in the closing arguments of counsel.

Although counsel for plaintiff should have anticipated at the beginning of the trial that the doctrine of imminent peril would be applicable if plaintiff was not successful in her attempts to remove the issue of contributory negligence from consideration by the jury, and should have prepared and submitted a conditional instruction on imminent peril in anticipation of that possibility, the instruction was submitted in time for the court to properly consider it. (Code Civ. Proc. § 607a.)

---

[1] Plaintiff also requested and the court refused an imminent peril instruction using B.A.J.I. form 137a. The court correctly refused that instruction since it applies to cases where the defendant's negligence is established as a matter of law.

The error in refusing to instruct the jury on "imminent peril" was prejudicial to plaintiff. The jury was not told that the law takes into account the impulses of a person placed in a dangerous situation and does not expect the same thoughtful care from him that it would expect if he was not so endangered. Had this instruction been given the verdict might well have been different.

The judgment is reversed.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied March 21, 1967, and respondent's petition for a hearing by the Supreme Court was denied April 26, 1967.